Ae

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. DURST, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 05 C 574 |
| ILLINOIS FARMERS INSURANCE COMPANY and AL SANCHEZ, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Illinois Farmers Insurance Company's ("IFIC") motion to dismiss counts II, III, and IV of Plaintiff William Durst's ("Durst") amended complaint. For the reasons stated below, we grant the motion to dismiss in its entirety.

## BACKGROUND

Durst alleges that he was an employee of IFIC from December 1984, when he signed an agreement with IFIC that permitted Durst to sell IFIC's insurance products for a commission, until October 2003, when Durst claims he was terminated because of his age and a disability, "even though he was performing his duties at or above

1

Defendant's reasonable expectations." (A. Compl. 1). Durst alleges that after his termination, IFIC distributed his insurance policies to younger agents. Durst further alleges that he never received a franchise disclosure statement as required by Illinois law, that he was harassed by IFIC's agents and threatened that he would be terminated if he did not "sell, give or assign" the internet domain name "farmersinsurancegroup.net" ("Domain Name"), which Durst had owned for six years. (A. Compl. 5). On October 4, 2005, Durst filed the instant amended complaint, alleging employment discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 621 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101 *et seq.* (Count I), violations of the Illinois Franchise Disclosure Act ("IFDA") (Count II), violations of the Illinois Consumer Fraud Act ("Fraud Act") (Count III), a claim alleging negligence for a breach of the duty of good faith and fair dealing (Count IV), and breach of contract (V). On January 11, 2006, Durst voluntarily dismissed the ADA claim in Count I, leaving the ADEA claim. IFIC has moved to dismiss counts II, III, and IV of Durst's amended complaint.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the

plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th Cir. 1998). Under the current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action . . . .'" *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)(stating also that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter,* 286 F.3d 437, 439 (7th Cir. 2002). However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.,* and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins,* 939 F.2d at 466-67. The Seventh Circuit has explained that

"[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

I. Illinois Franchise Disclosure Act Claim (Count II)

IFIC argues that Durst's IFDA claim should be dismissed. Specifically, IFIC argues that the IFDA, 815 ILCS 705/1, *et seq.*, "does not apply to the insurance industry, which is comprehensively regulated by the Insurance Code." (Mot. 3). Durst contends that the IFDA claim should not be dismissed because he has alleged each of the elements necessary to show a franchise relationship, and because the United States District Court for Connecticut recently rejected the argument in *Charts v. Nationwide Insurance Company*, 397 F.Supp. 2d 357, 362 (D. Conn. 2005), that IFIC is now advancing. According to Durst, the *Charts* decision is "good evidence of the state of the law in the United States." (Resp. 2).

Despite Durst's arguments regarding the significance of the *Charts* decision, this court is not bound by the precedents of courts in Connecticut. In *Vitkauskas v. State Farm Mut. Auto. Ins. Co.*, 509 N.E.2d 1385 (Ill. App. Ct. 1987), the Illinois appellate court was faced with the same question that we must currently consider: whether an agreement between an insurance agent and an insurance company falls under the IFDA. 509 N.E.2d at 1390-91. The court in *Vitkauskas* stated that in order to fall under the IFDA, a plaintiff must meet each element of the three-part

definition of a franchise contained in the IFDA, which defines a franchise as an agreement between two or more people in which:

> (a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and
> (b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logo-type, advertising, or other commercial symbol designating the franchisor or its affiliate; and
> (c) the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee . . . .

815 ILCS 705/3; *Vitkauskas*, 509 N.E.2d at 1391. In *Vitkauskas*, the court found that the insurance agent did not have the authority to sell insurance policies as required by the IFDA because "the sale could not be effective until approval of the defendant [insurance company] was forthcoming." *Vitkauskas*, 509 N.E.2d at 1391; *see also Terry v. Atlas Van Lines, Inc.*, 1988 WL 128639, at *17 (N.D. Ill. 1988)(citing *Vitkauskas* for the rule that an "employee [does] not 'sell' insurance [if] any sale was contingent upon the insurance company's approval").

In the instant action, the "agent appointment agreement" ("Agreement") between Durst and IFIC, which formed the basis for their relationship, clearly states that Durst agrees to "sell insurance for [IFIC] and to submit to [IFIC] every request or application for insurance for the classes and lines underwritten by [IFIC] and eligible in accordance with their published rules and manuals." (Compl. Ex. 1, 1). The Agreement also states that "[a]ll business *acceptable* to [IFIC] and written by the Agent will be placed with [IFIC]." (A. Compl. Ex.)(emphasis added). It is clear

from this language that the Agreement contemplates that any insurance policies "sold" by Durst had to be first approved by IFIC, just as the agreement in *Vitkauskas* required. Accordingly, we find that Durst cannot meet the first element of the franchise definition under the IFDA. This conclusion is supported by the court's view in *Vitkauskas* that "[t]he insurance industry has in fact been in business for centuries and it did not fall within the category designed to be protected by the IFDA," *Vitkauskas*, 509 N.E.2d at 1391. A number of courts in other states also have reached the same conclusion on this issue. *See, e.g., Stockton v. Sentry Ins.*, 989 S.W.2d 914, 917 (Ark. 1999)(holding that "it is apparent that the business relationship created by this [insurance] contract was not a franchise within the meaning of that term in" the Arkansas Franchise Act); *Erdmann v. Preferred Research, Inc.*, 852 F.2d 788, 791 (4th Cir. 1988)(holding that the Virginia Franchise Act does not apply to an insurance agreement); *Keeney v. Kemper Nat. Ins. Companies*, 960 F.Supp. 617, 625 (E.D. N.Y. 1997)(holding that the New York Franchise Act did not apply to an insurance agreement). Therefore, we grant IFIC's motion to dismiss the IFDA claim (Count II).

II. Illinois Consumer Fraud Act Claim (Count III)

IFIC also moves to dismiss count III, in which Durst alleges a violation of the Illinois Consumer Fraud Act ("Fraud Act"), 815 ILCS 505/1 *et seq*. The elements for a claim under the Fraud Act include: "1) a deceptive act or practice by [the

defendant], 2) [the defendant's] intent that [the plaintiff] rely on the deception, . . . 3) that the deception occurred in the course of conduct involving trade and commerce [and 4)] that the deceptive act proximately caused [the plaintiff's] injury." *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 576 (7th Cir. 2001). A plaintiff in a Fraud Act suit must also be a consumer, as defined under the statute. *Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004). In addition, pursuant to Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), a plaintiff must plead claims brought under the Fraud Act with particularity. Fed. R. Civ. P. 9(b); *see also Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999)(stating that "Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts, whether or not the applicable state or federal law requires a higher standard of proving fraud, which sometimes it does and sometimes it does not"). This means that "the plaintiff must plead the 'who, what, when, and where' of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

In the instant action, IFIC argues that Durst cannot "allege that he is a consumer within the meaning of the" Fraud Act, and instead claims that Durst "was in a business relationship with IFIC in which he was to sell and service IFIC's insurance products." (Mot. 11). IFIC also contends that Durst has not alleged that "IFIC engaged in a deceptive act or practice." (Mot. 12). Durst argues that he is a "consumer of franchise related products which Farmers' [sic] required him to buy

7

and use in his agency," such as computer services and advertising services and items. (Resp. 4-5). Durst also argues that IFIC "only argues one-half of the Consumer Fraud Act and omits the Fair Practices half." (Resp. 5).

The Fraud Act defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household . . . ." 815 ILCS 505/1(e). While a company may be considered a consumer under the Fraud Act, the Seventh Circuit has held that "the business purchaser is [generally] not a consumer because his only use of the purchased product is as an input into the making of a product that he sells, in contrast to the individual who consumes a six-pack of beer for pleasure or nutrition rather than incorporating the beer into a product (his beer belly is not for sale)." *Williams*, 366 F.3d at 579. However, the Fraud Act will nonetheless apply to business relationships if the fraud is "of sufficient magnitude to be likely to affect the market generally . . . and thus be likely to harm consumers in the colloquial sense of the ultimate buyers of the finished product." *Id.*

In the instant action, the only purchases that Durst claims he has made from IFIC are goods and services that are necessary for him to offer IFIC's insurance policies to the public. These purchases, on their own, are not sufficient to make Durst a consumer under the Fraud Act. Durst has also failed to allege anything in Count III that would show that IFIC's actions toward him would affect the consumers of the finished product, such product being the insurance policies. In

8

Count III, Durst complains that IFIC wrongfully terminated his employment, distributed his policies to other IFIC agents, and pressured Durst to sell the Domain Name. None of these allegations implicate the Fraud Act's concern for the general consumers of IFIC's products. Therefore, we find that Durst has not alleged facts that show he is a consumer under the definition provided in the Fraud Act.

Durst correctly argues that the Fraud Act covers unfair practices, in addition to fraudulent actions. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The Fraud Act defines unfair practices as "including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . ." 815 ILCS 505/2. The Illinois Supreme Court has also said that to determine whether actions are unfair under the Fraud Act, a court must consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 960 (citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1979)). In the instant action, the unfair practices complained of by Durst include simply the alleged termination of Durst without cause, the alleged distribution of Durst's insurance policies to other IFIC employees, and the alleged harassment of Durst to "sell, give or assign" the Domain Name to IFIC. (A. Compl. 5). None of these alleged actions involve deception or fraud, and

none of them would cause "substantial injury to consumers." *Robinson*, 775 N.E.2d at 960. Therefore, we find that Durst has not alleged any unfair acts by IFIC under the Fraud Act.

Finally, Durst has failed to plead his Fraud Act claim with the particularity required under Rule 9(b). While Durst includes the specific date of his termination and the date that his insurance policies were redistributed, he provides no specific dates for when he was harassed regarding the Domain Name. Instead, Durst claims that he was harassed "[b]eginning in December 2002 and continuing until October 22, 2003." (Resp. 5). Durst also fails to state the specific individuals who conducted this allegedly unfair or fraudulent activity, stating only that "Defendant" or "Defendant's employees and agents" did it. (Mot. 4-5). Such pleadings are not sufficient to show the "'who, what, when, and where' of the alleged fraud" that is required under Rule 9(b). *Uni\*Quality*, 974 F.2d at 923. Therefore, we grant IFIC's motion to dismiss the Fraud Act claim (Count III).

III. Negligence Claim (Count IV)

IFIC also argues that Durst's negligence claim in Count IV should be dismissed because "Illinois law does not recognize an independent cause of action in tort for breach of the implied duty of good faith and fair dealing." (Mot. 13). Durst argues that the Illinois courts have stated that there is an "independent cause of action [for the breach of the duty of good faith and fair dealing] in an insurance

10

duty-to-settle context [and that] there could be other fact patterns in which [such] an independent tort" could be found. (Resp. 6). The Illinois courts have recognized "only a narrow exception to [the] rule" that there is no independent tort for breaches of the duty of good faith and fair dealing, finding that "a separate action in tort would remain available *only* when an insurer breaches its duty to settle an action brought against its insured by a third-party claimant." *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 53 (Ill. App. Ct. 2004)(emphasis added). However, the Illinois Supreme Court has stated that "[t]his contractual covenant is not generally recognized as an independent source of duties giving rise to a cause of action in tort," *Cramer v. Insurance Exchange Agency*, 675 N.E.2d 897, 903 (1996), and the courts have been hesitant to expand the tort beyond situations involving the duty to settle insurance claims. *See, e.g., Martin*, 808 N.E.2d at 53; *Teldata Control, Inc. v. County of Cook*, 2004 WL 2997644, at *7 (N.D. Il. 2004)(stating that "it is well established that Illinois does not recognize an independent cause of action for breach of an implied covenant of good faith"); *Woodard v. American Family Mut. Ins. Co.*, 950 F.Supp. 1382, 1393-94 (N.D. Il. 1997)(stating that "[t]he Illinois Supreme Court in *Cramer* clearly foreclosed a plaintiff from maintaining . . . a claim [of bad faith] and as an independent tort action"). We will not expand the independent tort for breach of the implied duty of good faith and fair dealing to cover the claims alleged in the instant action. Therefore, we grant IFIC's motion to dismiss the negligence claim (Count IV).

11

## CONCLUSION

Based on the foregoing analysis, we grant IFIC's motion to dismiss Counts II, III, and IV in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 12, 2006